UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,


                -against-                                            S1 17-cr-0357 (LAK)


DAVID BLASZCZAK, et al.,


                         Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OPINION


                Appearances:

                                   Ian McGinley
                                   Joshua A. Naftalis
                                   Brooke E. Cucinella
                                   Assistant United States Attorneys
                                   ROBERT KHUZAMI
                                   ACTING UNITED STATES ATTORNEY

                                   David Esseks
                                   Eugene Ingoglia
                                   ALLEN & OVERY
                                   Attorneys for Defendant Robert Olan

LEWIS A. KAPLAN, *District Judge*.

            Defendant Robert Olan, one of four defendants in this alleged insider trading case,

seeks an order requiring the prosecution to review for *Brady* material certain information in the

possession of the Securities and Exchange Commission ("SEC").

*Facts*[1]

In July 2013, the SEC initiated an informal inquiry into the conduct underlying this case. It opened a formal investigation in November 2013. Between July 2013 and November 2014 it issued around 56 subpoenas and regulatory demands for documents.[2]

In November 2014, the SEC referred this matter to the United States Attorney's Office ("USAO") for criminal investigation.[3] The USAO then started to investigate, and an FBI investigation began in January 2015.[4]

Once the criminal investigation began, the USAO and SEC conducted 39 witness interviews in tandem.[5] The USAO and SEC representatives told the witnesses who were interviewed simultaneously by both that the agencies' investigations were separate and that the interviews were conducted together only as a matter convenience. [6] The agencies told each witness also that, if there were to be a proffer agreement, the witness would enter into a separate agreement with each agency.[7] In addition, the USAO and FBI interviewed or contacted witnesses around 21 times without SEC

---

[1] The Court assumes the parties' familiarity with the underlying facts and the procedural history and thus provides the minimal background necessary to decide the motions.

[2] DI 114, ¶ 4.

[3] *Id.*

[4] *Id.* ¶¶ 5-6.

[5] *Id*. ¶ 7.

[6] *Id.*

[7] *Id*.

involvement.[8]   The SEC provided the USAO with all the documents it obtained during its investigation, but the USAO acquired additional documents through grand jury subpoenas that were not shown to the SEC.[9]

At the conclusion of the investigations, the USAO did not ask the SEC, nor the SEC the USAO, to bring particular charges or to sue or charge a particular defendant, although each advised the other of its intentions.[10]   The USAO sought and obtained a grand jury indictment[11] that charged Olan and others.[12]   The Commission, after receiving an action memorandum[13] from the enforcement staff, authorized and filed a civil enforcement action against all of the defendants in this case except Olan.[14]  Its complaint, filed the day after the indictment was unsealed, alleges violations of the securities laws.  The indictment charges Olan and his co-defendants with securities fraud, but

---

[8]

   *Id.* ¶ 8.

[9]

   *Id.*

[10]

   *Id.* ¶ 13.

[11]

   DI 114, ¶ 15.

[12]

   DI 10.

[13]

   The action memorandum is the document prepared by SEC staff that requests authorization to begin an enforcement action. SECURITIES AND EXCHANGE COMMISSION, ENFORCEMENT MANUAL 22-23, *available at* https://www.sec.gov/divisions/enforce/enforcementmanual.pdf.  It "sets forth a Division recommendation and provides a comprehensive explanation of the recommendation's factual and legal foundation." *Id.*

[14]

   *SEC v. Blaszczak,* No. 17-cv-3919 (AJN).

also with conversion of government property and wire fraud.[15]

Olan now moves to compel the USAO to review the SEC's action memorandum and "any similar SEC documents addressing the merits of whether or not to charge Mr. Olan"[16] for *Brady* material.[17]  It must be noted also that the USAO, presumably in an effort to comply with Olan's request, asked to review the action memorandum, but the SEC refused.[18]  Instead, the SEC represented to the USAO that its staff relied in preparing its action memorandum only on documents already in the possession of the USAO and witness statements from witnesses made at interviews at which USAO personnel were present.[19]  The defendant does not dispute that the government has fulfilled its *Brady* obligations as to material in its possession, which includes all of the documents relied upon in the SEC action memorandum.[20]  Given that exculpatory information in the action memorandum would have had its origin in a document used in the memorandum's preparation, and given that the USAO has reviewed all such documents for *Brady* material, the universe of exculpatory information that theoretically could be contained uniquely in the action memorandum is vanishingly small.

---

[15]

DI 10, pp. 39-40, 42.

[16]

DI 78; DI 114, ¶ 15; DI 120, p. 2.

[17]

SECURITIES AND EXCHANGE COMMISSION, ENFORCEMENT MANUAL 22-23, *available at* https://www.sec.gov/divisions/enforce/enforcementmanual.pdf.

[18]

DI 114, ¶ 15.

[19]

*Id.*

[20]

DI 120, p. 2.

*Discussion*

Olan's motion rests on a series of foundations, none of which bears the weight placed upon it and which collectively cannot support the edifice he seeks to construct.

*The Court's Role Prior to Trial*

It often is said that the prosecution is obliged to disclose exculpatory information to a criminal defendant in a timely manner. But the principle, which serves well enough for most purposes when stated in that manner, actually is somewhat more nuanced, as this so-called *Brady* "obligation" is more limited. The nuance is important here.

*Brady* is not a rule of criminal procedure or other positive mandate.[21] Rather, *Brady* held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process *where the evidence is material either to guilt or to punishment,* irrespective of the good faith or bad faith of the prosecution."[22] And the Supreme Court subsequently has made clear that "suppressed" evidence "is 'material' only if there is a reasonable probability that, had the

---

[21]

Congress or the rule makers readily could require prosecutors to disclose any and al exculpatory material as a matter of course and thus transform our system by creating a discovery obligation enforceable before trial in place of our current system, which involves retrospective assessment of prejudicial effect flowing from non-disclosure. In the United Kingdom, the Criminal Procedure and Investigations Act of 1996 did exactly that. Section 3(1) obliges the prosecutor to "disclose to the accused any prosecution material which has not previously been disclosed to the accused and which might reasonably be considered capable of undermining the case for the prosecution against the accused or assisting the case for the accused" or to give the "accused a written statement that there is no [such] material."

[22]

*Brady v. Maryland,* 373 U.S. 83, 87 (1963) (emphasis added).

evidence been disclosed to the defense, the result of the proceeding would have been different."[23]

Thus, the *Brady* test may be applied only following a conviction, as only then is a court in a position

to determine whether disclosure of previously undisclosed information likely would have produced

a different outcome. The trial court's role prior to trial, as the Second Circuit made clear in *United*

*States v. Coppa,*[24] therefore is limited.

> "In *Coppa,* the district court concluded, subject to a narrow exception, that 'the Constitution requires the government to provide a defendant with all exculpatory and impeachment materials immediately upon request by a defendant, even if the request is made far in advance of trial.' The Second Circuit, however, granted mandamus to overturn this ruling, holding that 'a *Brady* violation occurs only where the government suppresses evidence that "could reasonably [have been] taken to put the whole case in such a different light as to undermine confidence in the verdict.' In doing so, it rejected the view that *Brady* imposes a duty independent of any prejudice to the accused:

>> "'Although the government's obligations under *Brady* may be thought of as a constitutional duty arising before or during the trial of a defendant, the scope of the government's constitutional duty—and, concomitantly, the scope of a defendant's constitutional right—is ultimately defined retrospectively, by reference to the likely effect that the suppression of particular evidence had on the outcome of the trial.'

> "The fact that there can be no *Brady* violation in the absence of prejudice is not to say either that the government has no cause for concern, or that a trial court is without power to order disclosure, in advance of trial. The government faces the prospect that too niggardly an approach risks the validity of any conviction and thus 'should resolve . . . doubts [as to the usefulness of evidence to the defense] in favor of full disclosure.' Moreover, the trial court 'has wide latitude . . . to carry out successfully its mandate to effectuate, as far as possible, the speedy and orderly administration of justice.' Indeed, the Second Circuit pointedly underscored this point in *Coppa* when it noted that the 'case present[ed] no occasion to consider the scope of a district court's discretion to order pretrial disclosures as a matter of sound

---

[23]
     *Pennsylvania v. Ritchie,* 480 U.S. 39, 57 (1987) (quoting *United States v. Bagley,* 473 U.S. 667, 682 (1985) (internal quotation marks omitted).

[24]
     267 F.3d 132 (2d Cir. 2001).

case management' and remanded 'to afford the District Court an opportunity to determine what disclosure order, if any, it deems appropriate as a matter of case management.'"[25]

Accordingly, this Court cannot say that the failure of the prosecution to review or turn over all or any part of the SEC's action memorandum, even assuming that the prosecutors had the ability to do so, would breach the prosecution's *Brady* obligations. It simply is too soon to tell. And while the Court, in an appropriate case, may require pretrial production of perhaps exculpatory materials that are available to the prosecutors, Olan does not invoke that power here as a matter of case management. He has not even attempted to show that sound case management requires production of the SEC's action memorandum.

*The Scope of the* Brady *Obligation*

The next premise upon which Olan's argument rests is that the prosecutors' duties under *Brady* would extend to the SEC action memorandum and any related SEC work product, assuming for the purpose of discussion that it is likely that the material in question contains evidence exculpatory of Olan. He relies on the facts that the SEC furnished documents that it had collected to the USAO, that the SEC and the USAO interviewed a number of witnesses at the same time, and that the SEC and USAO ultimately informed one another of the enforcement actions each intended to take.

Once again, it is useful to begin from first principles. It therefore bears repeating, albeit with different emphasis, that *Brady*'s holding was "that the suppression *by the prosecution* of

---

[25] *United States v. Stein,* 424 F. Supp.2d 720, 726-27 (S.D.N.Y. 2006) (footnotes omitted) (quoting *Coppa*, 267 F.3d at 140).

evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[26] Thus, the *Brady* doctrine is directed, first and foremost, at suppression of evidence by prosecutors although, to be sure, it is not – and could not properly be – so rigorously cabined. It extends to anyone who is an "arm of the prosecutor."[27]

Many cases deal with whether particular individuals have acted as "arms of the prosecutor" in given cases. Thus, for example, a government agent who "participated actively in [an] investigation," "was present at counsel's table throughout all or most of the trial," and "indicat[ed] that he was intimately involved in the prosecution" was held to have acted as an arm of the prosecutor.[28] But a parole officer did not.[29] Nor did a cooperating witness or informant who provided information and testified at trial, but who "played no role in the investigation or in determining investigation or trial strategy."[30] Even a government expert who assisted prosecutors in developing cross-examination questions and participated in mock cross examinations was held not to have acted as an "arm of the prosecutor,"[31] although *dicta* suggested that the result might have been otherwise had the expert been "involved with the investigation or presentation of the case to

---

[26]

*Brady v. Maryland*, 373 U.S. 83, 87 (1963) (emphasis added).

[27]

*United States v. Morrell*, 524 F.2d 550, 555 (2d Cir. 1975).

[28]

*Morell*, 524 F.2d at 555.

[29]

*Pina v. Henderson* 752 F.3d 47, 51 (2d Cir. 1985).

[30]

*United States v. Barcelo*, 628 Fed. App'x 36, 38 (2d Cir. 2015).

[31]

*United States v. Stewart*, 433 F.3d 273, 298 (2d Cir. 2006).

the grand jury[,] . . . interview[ed] witnesses or gathere[ed] facts," or "review[ed] documents or develop[ed] prosecutorial strategy."[32]

In this case, aspects of the relationship between the SEC and USAO with respect to this matter cut in different directions. The facts that both participated in many, though not all, witness interviews and that they ultimately informed each other of their enforcement intentions tend to support Olan. But other factors cut in the opposite direction. The SEC was not "involved with the . . . presentation of the case to the grand jury."[33] Although it interviewed witnesses and gathered facts alongside the USAO, it was not present at some prosecution contacts and interviews, did not review documents gathered only by the prosecution, and did not "develop[] prosecutorial strategy."[34] Representatives of the SEC have not accompanied the USAO to court proceedings in this case.[35] Neither the Commission nor the USAO recommended action to the other or had any role in the other's decision making process. The USAO has not even seen the SEC's action memorandum.

I view these circumstances as warranting the conclusion that the SEC's role here did not bring it within the arm of the prosecutor refinement of *Brady*.[36] But I need not rely upon this

---

[32] *Id.* at 298-99.

[33] *Id.* at 298.

[34] *Id.*

[35] *See Pina*, 752 F.3d at 51; *Barcelo*, *628* F. App'x at 38.

[36] Some courts have held that joint fact-gathering triggers an extension of the prosecution's *Brady* obligations. *E.g.*, *United States v. Connolly*, No. 1:16-CR-00370 (CM); 2017 WL 945934, at *7 (S.D.N.Y. Mar. 2, 2017); *United States v. Martoma*, 990 F. Supp. 2d 458, 460-62 (S.D.N.Y. 2014); *United States v. Gupta*, 848 F. Supp. 2d 491, 494 (S.D.N.Y. 2012). Others, however, have reached the opposite conclusion on similar facts. *E.g.*, *United States v. Rigas*, No. 1:02-CR-1236 (LBS), 2008 WL 144824, at *2 (S.D.N.Y. Jan.

alone, as there are two additional facts that make the result here clear.

First, whatever the scope of the "arm of the prosecution" doctrine, the *Brady* obligations of the prosecutors extend only to materials within prosecutors' possession, custody or control[37] or, in appropriate cases, that of the Department of Justice, perhaps another part of the Executive Branch, or a comparable state authority involved in the federal prosecution.[38] But that is not this case. The prosecution requested that the SEC permit it to review the action memorandum and any other internal work product coming within the scope of Olan's request. The Commission declined.

Second, the SEC's commissioners are appointed by the President, with the advice and consent of the Senate, for five-year terms. Unlike cabinet secretaries, however, they do not serve at the pleasure of the President. They may be removed only for "inefficiency, neglect of duty or

---

15, 2008); *Ferreira v. United States*, 350 F. Supp. 2d 550, 556-57 (S.D.N.Y. 2004). The crux of the disagreement seems to lie with the view of the first group of cases that joint fact-gathering is sufficient because "the purpose of *Brady* is to apprise the defendant of exculpatory evidence obtained during the fact-gathering that might not otherwise be available to the defendant." On the other hand, however, the fact that *Brady* is intended only to ensure that non-disclosure does not result in a conviction that probably would not have occurred had disclosure been made suggests a different conclusion. Given my view of this case, I need not now opt for one or the other line of cases.

[37]

*See United States v. Pena*, 227 F.3d 23, 27 (2d Cir. 2000) (*Brady* obligation to disclose exculpatory information in presentence reports limited to information in reports in the possession of the prosecution ); *see also United States v. Pembrook*, 876 F.3d 812, 826 (6th Cir. 2017) (*Brady* did not require federal prosecutors to review state prison records not in the prosecutor's possession); *United States v. Erickson*, 561 F.3d 1150, 1163 (10th Cir. 2009) ("[T]he defendant must also show that the favorable evidence was in the possession or control of the government."); *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991) ("The prosecution is under no obligation to turn over materials not under its control.").

[38]

*See United States v. Ghailani*, 687 F. Supp. 2d, 365, 370 (S.D.N.Y. 2010) (prosecutor's discovery obligations extended to certain documents in possession of senior Justice Department personnel involved in decisions about delay in criminal prosecution pertinent to speedy trial defense but not involved in actual prosecution of the case).

malfeasance in office."[39]   The Commission is not a cabinet department subject to ultimate presidential authority with respect to its normal activities.  Thus, the Commission could not be ordered, even by the President, to make its action memorandum and any similar work product available to the prosecution in this case.

Accordingly, this Court declines to order that the prosecution review the SEC's action memorandum and any related work product as requested by Olan.

## Conclusion

For the reasons stated above, defendant's motion for an order directing the United States Attorney's Office to review certain material in possession of the Securities and Exchange Commission for *Brady* material [DI 78] is denied in all respects.  Nothing in this ruling, however, forecloses defendants from seeking to serve a subpoena on the SEC for the materials he seeks, although the Court of course expresses no view with respect to any objections that the Commission or other parties to this case might raise should he seek to do so.

SO ORDERED.

Dated:        March 29, 2018

Lewis A. Kaplan
United States District Judge

---

[39]  *SEC v. Blinder, Robinson & Co.*, 855 F.2d 657, 681 (10th Cir. 1988).